UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELINA GROMINA,

Plaintiff,

-v-

ALEX KAZMARCK,

Defendant.

22-CV-744 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Elina Gromina brings this action against *pro se* Defendant Alex Kazmarck, asserting claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").

Before the Court is Defendant's motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the motion is denied.

## I.    Background

### A.    Factual Background

The following facts are drawn from Gromina's complaint (ECF No. 1 ("Compl.")), which are presumed true for the purpose of resolving this motion to dismiss. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

In October 2019, Gromina was hired "as a trader and/or 'project manager'" for Forexonia, LLC ("Forexonia"), and Kazmarck Capital, LLC ("Kazmarck Capital"), two limited liability companies ("LLCs") doing business in New York. (Compl. ¶¶ 8-9, 14.) Gromina

1

alleges that Forexonia "has been an unauthorized" LLC operating in New York and that Kazmarck Capital is organized and registered in New York.  (*Id.* ¶¶ 8-9.)

Both Forexonia and Kazmarck Capital were controlled and managed by Defendant Alex Kazmarck.[1]  (*Id.* ¶¶ 12, 14.)  Kazmarck "oversaw the day-to-day operations" as well as all personnel and employee decisions at the two LLCs.  (*Id.* ¶ 14.)

Upon her taking the job, Gromina did not receive information about her rate of pay or the basis on which it would be calculated.  (*Id.* ¶ 29.)  And throughout her time working for Forexonia and Kazmarck Capital, she never received wage statements reflecting her hourly rate or the number of hours she worked per day.  (*Id.* ¶ 26.)

During her employment, Gromina "assist[ed] in handling the investments of [the LLCs'] clients and monitoring the various markets throughout the day."  (*Id.* ¶ 13.)  Gromina was required to work six days a week from 7:30 in the morning to 6:00 in the evening, or later.  (*Id.* ¶ 15.)  Occasionally, Gromina would have to work until 10:00 or 11:00 at night.  (*Id.*)

Gromina worked in this capacity until April 2020, but during those seven months she was paid only four times, taking home a total of $2,640.  (*Id.* ¶¶ 13, 17.)  On December 31, 2019, Gromina was paid $250, despite working "about 66 hours per week."  (*Id.* ¶ 18.)  Gromina continued to work these hours, six days a week, until April 10, 2020.  (*Id.* ¶¶ 18-19.)  However, between January 10 and February 10, Gromina was paid only $200, and between February 11 and March 9, she was paid only $400.  (*Id.* ¶ 19.)  Between March 10 and April 10, Gromina was paid $1,790, but she was told this payment was intended to cover "the next four months of work"

---

[1] Forexonia, LLC, and Kazmarck Capital, LLC, were named defendants in this action until the Court entered a default judgment against them on January 9, 2024.  (ECF No. 48.) Individual Defendant Alex Kazmarck is the only remaining defendant in this action.  (*Id.*)

in addition to the month she had just worked. (*Id.* ¶ 20.)  Further, Gromina was never paid an overtime rate for the work she put in over forty hours per week. (*Id.* ¶ 16.)

In April 2020, Gromina texted Kazmarck to complain about the infrequency of her pay, using the April payment as an example of how her pay "fell drastically short of being commensurate with her hours worked." (*Id.* ¶ 32.)  Gromina was then fired from her job. (*Id.*)  Additionally, Gromina alleges, Kazmarck "threatened [Gromina's] immigration status through falsely reporting her to the authorities," and "withheld [Gromina's] passport and immigration-related documents" until Gromina made further complaints and Kazmarck returned them. (*Id.*)

### B.    Procedural History

Gromina commenced this action on January 28, 2022, asserting claims against Defendant Kazmarck, Forexonia, LLC, and Kazmarck Capital, LLC. (Compl.)  On January 9, 2024, the Court entered a default judgment against the two LLCs, after they failed to retain counsel to represent them, leaving individual Defendant Kazmarck as the sole remaining defendant. (ECF No. 48.)  Kazmarck was properly served at his new residence in Florida on February 15, 2024. (ECF No. 56.)

On March 7, 2024, Kazmarck, proceeding *pro se*, moved to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. (ECF No. 57 ("MTD").)  On May 28, 2024, Gromina opposed Kazmarck's action (ECF No. 59 ("Opp.")), and on May 13, 2024, Kazmarck replied in support of his motion (ECF No. 62 ("Reply")).

## II.    Legal Standards

### A.    Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal of a claim for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional

power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The

burden is on the plaintiff to allege facts establishing proper subject matter jurisdiction.  *Lunney v.*

*United States*, 319 F.3d 550, 554 (2d Cir. 2003).  "In a motion to dismiss [for lack of subject

matter jurisdiction] pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the

legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't*

*of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).

> **B.      Personal Jurisdiction**

As is the case with subject matter jurisdiction, on a motion to dismiss for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of

establishing that the court has jurisdiction over the defendant." *Grand River Enters. Six Nations,*

*Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler*

*Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  Where, as here, there has been no

"full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie

showing of jurisdiction." *Id.* (quoting *Bank Brussels*, 171 F.3d at 784).  At this stage, such a

showing "may be established solely by allegations" pleaded in good faith.  *Dorchester Fin. Sec.,*

*Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam) (quoting *Ball v. Metallurgie*

*Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  The allegations, however, must be

more than "conclusory statement[s]"; instead, they must state specific "facts supporting th[e]

conclusion" that personal jurisdiction is proper.  *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184

(2d Cir. 1998).

> **C.      Failure to State a Claim**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the plaintiff must state "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Such a

claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

## III.    Discussion

The claims in Gromina's complaint comprise: (1) failure to pay minimum wage in violation of the FLSA and NYLL; (2) failure to pay overtime wages in violation of the FLSA and NYLL; (3) failure to furnish accurate wage statements in violation of NYLL; (4) failure to furnish adequate notice of rate of pay in violation of NYLL; and (5) retaliation in violation of NYLL. Kazmarck moves to dismiss all of these claims.

### A.    Subject Matter Jurisdiction

Kazmarck first moves to dismiss Gromina's complaint for lack of subject matter jurisdiction under Rule 12(b)(1), arguing that the FLSA does not apply to the "non-commercial, non-operational," "informal" relationship between Gromina and the two LLCs, and thus, presumably, federal question jurisdiction under 28 U.S.C. § 1331 does not apply.[2] (MTD at 1-2.) The threshold question for the Court is whether the existence of an employment relationship under the FLSA is "jurisdictional" and must be determined by a court deciding a 12(b)(1) motion, or whether it relates to the merits and should be resolved at a later stage.

---

[2] Kazmarck does not explicitly allege a lack of federal question jurisdiction, but because Kazmarck is a *pro se* defendant, the Court interprets his argument "liberally" and "rais[ing] the strongest arguments that [he] suggests." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).

In determining whether a fact is "jurisdictional," the Supreme Court in *Arbaugh v. Y&H Corp.*, directed lower courts to first consider whether the statute in question "specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor." 546 U.S. 500, 515 (2006). In making this determination, courts look to whether the statutory requirement appears in a jurisdictional provision of the statute, or one that "speak[s] in jurisdictional terms or refer[s] in any way to the jurisdiction of the district courts." *See id.* (quotation marks omitted). Ultimately, "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 516.

Based on the *Arbaugh* analysis, whether or not Gromina's relationship with Forexonia and Kazmarck Capital qualifies as employment under the FLSA is not a jurisdictional question. The definition of "employ," and related definitions of "employer," and "employee" are all found in the "Definitions" section of the FLSA and not in a jurisdictional provision. 29 U.S.C. § 203; *see Quito v. Zheng*, 710 F. App'x 28, 29 (2d Cir. 2018) (summary order) ("As in *Arbaugh*, the requirement at issue here is found within the 'definitions' section of the statute, rather than the jurisdictional section of the statute.") (citations omitted). And courts in this Circuit have repeatedly found the parallel inquiry of whether a defendant qualifies as an "enterprise" under the FLSA to be non-jurisdictional. *See Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 422 (S.D.N.Y. 2017) ("[T]he prevailing view in this Circuit is that the question of whether enterprise coverage applies goes to the merits of an FLSA cause of action and is not jurisdictional.").

Because the existence of an "employment" relationship under the FLSA is not a jurisdictional question, Gromina's allegations that she suffered violations of the FLSA at the hands of Kazmarck, who oversaw personnel at Forexonia and Kazmarck Capital (Compl. ¶¶ 13-15, 33-43, 54-65), are adequate to raise a federal question claim for jurisdictional purposes. *See*

*Raila v. United States*, 355 F.3d 118, 119 (2d Cir. 2004) ("Dismissal [under 12(b)(1)] is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief."). The Court therefore has supplemental jurisdiction over Gromina's NYLL claims under 28 U.S.C. § 1367. *See* Arbaugh, 546 U.S. at 506 ("[U]nder 28 U.S.C. § 1367, federal courts may exercise 'supplemental' jurisdiction over state-law claims linked to a claim based on federal law."). Thus, Gromina's complaint survives Kazmarck's motion to dismiss for lack of subject matter jurisdiction.[3]

### B.    Personal Jurisdiction

Kazmarck next moves to dismiss Gromina's complaint for lack of personal jurisdiction. A federal court must either have "general" or "specific" personal jurisdiction over a defendant to adjudicate a claim against him. *See Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014). The Court analyzes each in turn.

A court may assert general, or "all-purpose" jurisdiction, over a natural person in the state where he is domiciled at the time a complaint is filed. *Id.* at 122; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013). Gromina alleges that Kazmarck is subject to the Court's general personal jurisdiction because he concedes in his motion to dismiss that he resided in New York "at the time of the alleged events." (Opp. at 12; MTD at 2.) However, because general personal jurisdiction is determined by domicile, not residence, at the time a complaint is filed, the relevant inquiry is where Kazmarck was domiciled on January 28, 2022, not where he

---

[3] Kazmarck also argues that "diversity jurisdiction is not satisfied as both parties were domiciled in New York." (MTD at 2.) However, Gromina only alleged federal question jurisdiction under 28 U.S.C. § 1331 (Compl. ¶ 3), and she does not need multiple avenues to establish subject matter jurisdiction in this Court.

resided when the alleged violations occurred. *See Prince v. Intercept*, 634 F.Supp.3d 114, 128

(S.D.N.Y. 2022). Because there remain questions over Kazmarck's domicile at the time the

complaint was filed, the Court turns to the clearer avenue of specific personal jurisdiction.[4]

Specific jurisdiction, which is based on a defendant's connections with the forum state,

must (1) fall under New York state's long-arm statute, and (2) comport with constitutional due

process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010). "In

New York—except in 'rare' cases—these two questions [of long-arm applicability and

constitutional due process] yield the same result." *Pettenato v. Beacon Health Options, Inc.*, 425

F. Supp. 3d 264, 273 (S.D.N.Y. 2019) (quoting *Eades v. Kennedy, PC Law Offices*, 799 F.3d

161, 168 (2d Cir. 2015)).

New York's long-arm statute permits jurisdiction over a non-domiciliary defendant if the

cause of action arises from defendant "transact[ing] any business within the state." N.Y.

C.P.L.R. § 302(a)(1). Importantly here, "[s]ection 302(a) also confers jurisdiction over

individual corporate officers who supervise and control an infringing activity." *Chloe*, 616 F.3d

at 164. To determine whether a defendant transacted business that would trigger the long-arm

statute, courts look to whether he "purposefully avail[ed] [himself] of the privilege of conducting

activities within New York," *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (N.Y. 2014)

(cleaned up), and whether there is "an articulable nexus, or a substantial relationship, between

---

[4]    In the subject matter jurisdiction section of his motion to dismiss, Kazmarck states:
"[B]oth parties were domiciled in New York." (MTD at 2.) However, it is not clear whether
Kazmarck is stating that the parties were domiciled in New York at the time the alleged
violations took place or at the time the complaint was filed. Further, the Court is unconvinced
that Kazmarck understands the legal requirements for domicile (residence and intent to remain in
that state) as opposed to mere residence, and therefore does not credit his conclusory assertion.
*See Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).

the claim asserted and the actions that occurred in New York," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007).

Due process requires "minimum contacts" with the forum state and a "reasonableness" inquiry, that is "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (quotation marks omitted).

Kazmarck's business connections to New York abound. Kazmarck has conceded that he resided in New York "at the time of the alleged events," when he was managing both Forexonia and Kazmarck Capital. (MTD at 2; Compl. ¶¶ 10, 12.) Both LLCs conducted business and maintained physical addresses in New York, and Kazmarck Capital was organized and registered in the state. (Compl. ¶¶ 8-9.) This is exactly the kind of "purposeful availment" of the forum state required to trigger New York's long-arm. *See Paterno*, 24 N.Y.3d at 376 ("Purposeful activities are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (quotation marks omitted)).

During the time Kazmarck resided in New York and managed the LLCs, he was "responsible for all personnel decisions regarding the employees," including providing Gromina's notices and pay. (Compl. ¶¶ 12, 14.) Gromina was also a resident of New York when she was hired by the LLCs and throughout the time she worked for them. (*Id.* ¶ 6.) Thus, Gromina's FLSA and NYLL claims for wage theft, failure to properly notify, and retaliation, have a sufficient nexus to Kazmarck's personnel management actions in New York.

Given the extensive connections to the state of New York involved in this case, it is reasonable and fair that Kazmarck must resolve these disputes in the forum where all the relevant events took place.

Because both the long-arm and constitutional due process requirements are satisfied, the Court may properly exercise specific personal jurisdiction over Kazmarck in his capacity as the manager and personnel supervisor of both LLCs.

### C.    Failure to State a Claim

#### 1.    FLSA Economic Realities Test

To survive a motion to dismiss a minimum wage or overtime compensation claim under the FLSA, a plaintiff must allege that (1) she was an employee of defendant, (2) her worked involved interstate activity for an entity that has at least $500,000 in annual gross sales, and (3) she worked time for which she was not adequately compensated.  29 U.S.C. §§ 203 (b), (d), (e), (s); § 206(a); § 207(a); *Zhen Ming Chen v. Y Cafe Ave B Inc.*, No. 18-CV-4193, 2019 WL 2324567, at *2 (S.D.N.Y. May 30, 2019).

Kazmarck does not dispute that Forexonia and Kazmarck Capital's work involved interstate commerce, that the LLCs generated more than $500,000 annually, or that Gromina failed to receive compensation commensurate with minimum and overtime wages for the hours she worked.  Kazmarck instead argues that "[t]he financial interactions [between the two] . . . were not employment compensation but rather were aligned with the mutual support common among friends working on a shared venture" (MTD at 3), and that Gromina's complaint

does not adequately plead facts indicating that Kazmarck exercised sufficient control over Gromina's work to qualify as an employer under the FLSA and NYLL (Reply at 2).[5]

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and defines "employee" as "any individual employed by an employer," with a few enumerated exceptions not relevant here, *id.* § 203(e). The Supreme Court has interpreted the FLSA's coverage broadly, *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992), and directed lower courts to look to "economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity," in determining whether an employer-employee relationship falls under the statute, *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citations and quotation marks omitted).

The Second Circuit has developed a multi-factor test to operationalize this question of "economic reality." Courts are instructed to consider: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (quotation marks omitted). And when determining whether an individual officer qualifies as an "employer" under the FLSA, courts must additionally consider (5) the "operational control" exerted by that

---

[5] Kazmarck also alleges that Gromina "fails to meet New York's stringent requirements for piercing the corporate veil" (Reply at 2) and cannot pursue individual claims against him because "a corporation is legally distinct from its shareholders, officers, and employees" (MTD at 3). However, Gromina is not asking the Court to pierce the corporate veil of either LLC, but rather is relying on Section 203 of the FLSA and Section 190(3) of NYLL, which provide for individual liability for corporate officers. *See Samborski v. Linear Abatement Corp.*, No. 96-CV-1405, 1999 WL 739543, at *3 (S.D.N.Y. Sept. 22, 1999); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 134 (S.D.N.Y. 2014).

individual, including some level of oversight of "workplace conditions and operations, personnel, or compensation," and (6) the individual's "potential power" as a manager even if he does not constantly exercise it. *Irizarry v. Catsimatidis*, 722 F.3d 99, 109-10 (2d Cir. 2013).

Gromina alleges that she was hired by "Defendants," which, at the time she filed her complaint, included Forexonia, Kazmarck Capital, and individual Defendant Kazmarck. (Compl. ¶ 13.) She also states that her termination was "[i]n response" to a text message she sent to Kazmarck, complaining about her infrequent and inadequate pay. (*Id.* ¶ 32.) With Gromina's factual allegations accepted as true, as they must be at this stage, this retaliation indicates that Kazmarck must have had the power to fire Gromina. Further, Gromina alleges that Kazmarck "was responsible for all personnel decisions regarding the employees working at either or both entities," and "regulates the employment of persons employed by [the LLCs]." (*Id.* ¶¶ 12, 14.) And it was Kazmarck who informed Gromina that the April 2020 payment was intended to cover her March 10 to April 10 work as well as "the next four months of work," supporting the inference that Kazmarck dealt with employment management and accounting. (*Id.* ¶¶ 19-20.) Finally, Gromina reached out to Kazmarck when she felt that she had not been adequately renumerated for her time, suggesting that he was responsible for determining the rate and method of payments for the LLCs' employees. (*Id.* ¶ 32.) Though Gromina has not alleged that Kazmarck maintained employment records for the LLCs, the Second Circuit has held this factor "is not dispositive." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 140 (2d Cir. 1999).

The Court next considers the two additional factors required for an individual corporate officer to be considered an "employer" under the FLSA. Based on what Gromina has alleged, Kazmarck had adequate operational control and potential power at these LLCs to qualify as an employer. Gromina alleges that "[a]t all relevant times, Defendant Kazmarck was and still is in

active control and management of the Defendants Kazmarck Capital, LLC, and Forexonia, LLC, [and] regulates the employment of persons employed by these entities." (Compl. ¶ 12.) She further states that "Kazmarck oversaw the day-to-day operations of Defendant Forexonia's and Defendant Kazmarck Capital, LLC's business." (*Id.* ¶ 14.)

Comparing Kazmarck to other officers the Second Circuit has determined to be "employers" under the FLSA, his status becomes even more clear. In *Irizarry v. Catsimatidis*, the Second Circuit found that a chairman and CEO of a supermarket chain individually qualified as an "employer" under the FLSA because he had "functional control over the enterprise as a whole," and was engaged in the everyday working of the individual stores, even though he may have "only occasionally" dealt with store personnel issues. 722 F.3d at 116-17. And in *Herman v. RSR Security Services*, the Second Circuit held that a corporate officer for a firm that provided private security guards individually qualified as an "employer" under the FLSA because he had hired and fired guards and had "on occasion, supervised and controlled employee work schedules and the conditions of employment," even though "[l]ittle evidence" showed that he determined rates of pay or was involved in maintaining employee records. 172 F.3d at 140-41. Kazmarck checks even more of the six factors than the officers in *Irizarry* and *Herman* did.

## 2.    NYLL Common Law Test

Plaintiff's allegations are also sufficient to establish Kazmarck's liability for violations of minimum and overtime wages under NYLL. NYLL defines an employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," N.Y. Lab. Law § 190(3), and an employee as "any person employed for hire by an employer in any employment," *id.* § 190(2). In determining whether an employment relationship exists under NYLL, "New York courts apply the common law test . . . . Although substantially similar to the FLSA, the common law focuses more on the

degree of control exercised by the purported employer, as opposed to the economic reality of the situation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (citations and quotation marks omitted).[6]  The New York Court of Appeals has enumerated five non-exhaustive factors to consider in determining the degree of control: "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003).  However, "notwithstanding *Bynog's* . . . five factors," the most important consideration under the common law test "is the degree to which the purported employer exercises control in fact over the results produced or the means used to obtain them." *Hart*, 967 F. Supp. 2d at 923-24.

Gromina's complaint adequately alleges that the LLCs and Kazmarck had sufficient control over her to qualify as employers under NYLL.  Gromina worked full-time for the LLCs and was specifically subject to Kazmarck's direction as the head of "personnel decisions." (Compl. ¶ 14.)  Gromina was required to work on a fixed schedule, ten and a half hours a day, six days a week, and "occasionally" she was required to work even longer hours.  (*Id.* ¶ 15.) While Gromina alleges that she was not paid an adequate amount, she was paid on a relatively consistent schedule between December 2019 and April 2020.  (*See id.* ¶¶ 18-20.)  Further, during her employment and even after she was terminated, Kazmarck "withheld [Gromina's] passport and immigration-related documents in the office" as a way to exert significant control over her ability to find or engage in other employment or leave the country.  (*See id.* ¶ 32.)

---

[6] While two slightly different tests have been articulated for the FLSA and NYLL, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."  *Hart*, 967 F.Supp.2d at 924.

Gromina has thus adequately alleged facts to support a finding that Kazmarck qualifies as an "employer" under the FLSA and NYLL and that the two were thus in an employer-employee relationship.  *See Perez Perez v. Escobar Constr., Inc.*, No. 23-CV-1240, 2024 WL 3594325, at *2 (2d Cir. July 31, 2024) (summary order) ("[T]o state a claim under the FLSA or NYLL and avoid dismissal [on the grounds that an employer-employee relationship does not exist], Plaintiffs must allege facts sufficient to plausibly show that one or more of the Defendants was their employer.").

Kazmarck's motion to dismiss for failure to state a claim is therefore denied.

## IV.    Conclusion

For the foregoing reasons, Kazmarck's motion to dismiss is DENIED.  Kazmarck shall file an answer within fourteen days after the date of this opinion and order.  *See* Fed. R. Civ. P. 12(a)(4)(A).

The Clerk of Court is directed to close the motion at Docket Number 57.

The Clerk of Court is directed to mail a copy of this opinion and order to the *pro se* Defendant.

SO ORDERED.

Dated:  October 21, 2024
        New York, New York

_____
                J. PAUL OETKEN
            United States District Judge