UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELINA GROMINA,
Plaintiff,

-v-

ALEX KAZMARCK,
Defendant.

22-CV-744 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Elina Gromina brought this action against Forexonia, LLC, Kazmarck Capital, LLC, and Alex Kazmarck (collectively, "Defendants"), asserting claims under the Fair Labor Standards Act (the "FLSA") and the New York Labor Law (the "NYLL"). (*See generally* ECF No. 1.) Kazmarck, proceeding *pro se*, is the only remaining defendant in this action. (*See* ECF No. 48.) Before the Court is Gromina's motion for summary judgment against Kazmarck. (ECF No. 100.) For the reasons that follow, the motion is denied.

## I. Background

The facts set forth here are taken from the parties' Rule 56.1 Statements and the record evidence cited in those Statements. (See ECF No. 101-6 ("Pl.'s Statement"); ECF No. 102 at 1-8 ("Def.'s Resp."); ECF No. 102 at 8-9 ("Def.'s Counterstatement").) These facts are undisputed except where otherwise noted.[1]

[1] Gromina does not file a response to Kazmarck's counterstatement. Because Kazmarck frames his counterstatement as "material facts *as to which a genuine issue exists*" (Def.'s Counterstatement at 8 (emphasis added)), and because the counterstatement recites the same disputed facts that he raises in response to Gromina's statement, the Court does not consider the facts included in the counterstatement to be undisputed.

At all relevant times, Kazmarck was the sole member of Kazmarck Capital LLC and the owner of Forexonia LLC. (Pl.'s Statement ¶ 2.) Kazmarck Capital LLC was an investment management firm. (*Id.*) Kazmarck disputes any implication that Forexonia was an operating firm with customers, offices, or employees, but does not dispute that it was aimed at providing economic analysis and signals to potential customers. (Def.'s Resp. ¶ 2; *see also* ECF No 101-4 ("Kazmarck Dep.") at 12.[2])

From October 2019 through April 2020, Gromina worked with Defendants.[3] (Pl.'s Statement ¶ 1.) Gromina had no prior experience in trading or financial markets before working with Defendants, and Kazmarck trained her on how to perform her duties, which included working on signals and analysis for Forexonia. (*Id.* ¶¶ 9-10, 12, 14; *see also* Def.'s Resp. ¶ 14.)

There was no written agreement governing Gromina's working relationship with Kazmarck (Pl.'s Statement ¶ 17), and the nature of that relationship is heavily disputed. Gromina alleges that Kazmarck hired her as an employee to work as a trader and project manager, with no specified end date. (*Id.* ¶¶ 1, 3, 19.) Kazmarck agrees that the arrangement was indefinite but alleges that Gromina was never an employee of either him or his companies—instead, he contends, he and Gromina had entered into a partnership to collaborate on Forexonia and had agreed to split the business and the profits. (Def.'s Resp. ¶¶ 1, 19.) The parties agree that Gromina never contributed any capital to Forexonia or Kazmarck Capital (Pl.'s Statement

---

[2] Page numbers in this citation and in similar citations to deposition transcripts refer to the internal pagination. All other page numbers in citations to the record refer to the PDF pagination.

[3] Although Kazmarck disputes this paragraph of Gromina's Rule 56.1 Statement, he disputes only the characterization of the working relationship, not the duration of the relationship. (*See* Def.'s Resp. ¶ 1.)

¶ 16; Def.'s Resp. ¶ 16), but Kazmarck insists that the parties had agreed to a fifty-fifty split of Forexonia's profits if it launched. (Def.'s Resp. ¶ 16.)

Gromina alleges that Kazmarck provided her with a work schedule pursuant to which she worked six days per week, from 7:30 a.m. until as late as 11:00 p.m, and that Kazmarck controlled and dictated when she was required to work. (Pl.'s Statement ¶¶ 5-7.) But Kazmarck maintains that Gromina was her own supervisor, that she was referencing only an example schedule that he had provided her, and that the example schedule was not "mandatory or supervisory." (Def.'s Resp. ¶¶ 5-6.)

The parties agree that, for the duration of Gromina's seven-month working relationship with Defendants, she received only $2,640 from Defendants. (Pl.'s Statement ¶ 22.) But Kazmarck disputes the characterization of this sum as wages, arguing instead that the money was only financial support and an advance on Forexonia's future profits. (Def.'s Resp. ¶ 22.) Kazmarck concedes that outside of this sum, he never paid Gromina wages, did not maintain time records for Gromina during the duration of her work with him, and did not provide Gromina with time records, wage theft prevention notices, or wage payment statements. (*Id.* ¶¶ 25, 28-31.) The parties dispute whether Gromina complained to Kazmarck about the lack of wages. (Pl.'s Statement ¶ 26; Def.'s Resp. ¶ 26.)

Gromina states that she was terminated after she complained about Defendants' failure to pay her wages. (Pl.'s Statement ¶ 32.) Kazmarck, in turn, states that Gromina never complained about pay, that Gromina was not terminated, that the parties wound down the collaboration, and that Gromina left him because she was not getting paid. (Def.'s Statement ¶ 32.) The parties also dispute whether Kazmarck threatened Gromina's immigration status or withheld her immigration documents following her complaints about wages. (*Id.* ¶ 33.)

Gromina commenced this action on January 28, 2022. (ECF No. 1.) After counsel for Forexonia and Kazmarck Capital withdrew (ECF No. 34), the two companies failed to obtain new counsel and were subsequently deemed in default (ECF No. 35). On January 9, 2024, the Court entered default judgment for Gromina against Forexonia and Kazmarck Capital in the amount of $62,285.77, consisting of $37,712.57 to Gromina, $23,673.20 in attorney's fees, and $900 in costs. (ECF No. 48.)

Kazmarck first appeared in the action, proceeding *pro se*, on December 6, 2023. (ECF No. 43). He then filed a motion to dismiss the complaint for lack of jurisdiction (ECF No. 57), which the Court denied on October 21, 2024 (ECF No. 64). Kazmarck failed to file a timely answer and the Clerk of Court issued a Certificate of Default against him on November 12, 2024. (ECF No. 72.) Kazmarck then sought an extension to file his answer and opposed default judgment, and the Court ultimately set aside the Certificate of Default. (ECF No. 80.) The case proceeded to discovery, which concluded on January 31, 2026. (ECF No. 95.) On May 15, 2026, Gromina filed her motion for summary judgment (ECF No. 100), accompanied by a memorandum of law (ECF No. 101 ("Mem.")), Gromina's Rule 56.1 Statement (Pl.'s Statement), and various exhibits. On June 15, 2026, Kazmarck filed an opposition (ECF No. 103 ("Opp.")), alongside his Rule 56.1 Response and Counterstatement (Def.'s Resp.; Def.'s Counterstatement), and a declaration attaching various attachments (*see generally* ECF No. 104). On June 30, 2026, Gromina filed a reply in further support. (ECF No. 106 ("Reply").)

## II. Legal Standard

Summary judgment is warranted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine dispute exists

where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 251 (S.D.N.Y. 2021) (quoting *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016)). In resolving a summary judgment motion, the Court "is required to view the record in the light most favorable to the party against which summary judgment is contemplated and to resolve all ambiguities and draw all factual inferences in favor of that party." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008).

The moving party has the initial burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). Moreover, "[w]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 482 (S.D.N.Y. 2024) (cleaned up). That said, "the party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Chichinadze*, 517 F. Supp. 3d at 251 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Rather, the non-moving party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006)) (other quotation marks omitted). "[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996). "[T]o survive a summary judgment motion, the opposing party must establish a genuine issue of fact by 'citing to particular parts of materials in the record.'" *Mangahas*, 754 F. Supp. 3d at 482 (quoting Fed. R. Civ. P. 56(c)(1)(A)).

"In considering a dispositive motion brought or defended by a *pro se* litigant, the Court must 'liberally construe' the *pro se* party's pleadings in his favor and hold him to 'less stringent standards than formal pleadings drafted by lawyers.'" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 1643781, at *4 (E.D.N.Y. Apr. 2, 2020) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980)). "Nonetheless, '[p]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment.'" *Id.* (quoting *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002)).

## III. Discussion

### A. FLSA Eligibility

As a threshold matter, Kazmarck contends that Gromina cannot establish that she is covered by the FLSA. (Opp. at 6.) Both the minimum wage and overtime provisions of the FLSA apply only to "employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively." *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).

Kazmarck argues that neither Kazmarck Capital nor Forexonia is an "enterprise" that is "engaged in commerce" as defined by the FLSA, which requires "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii). (Opp. at 6.) Gromina seemingly concedes this fact and argues that she is instead individually covered under the FLSA because her "work was inherently interstate and international." (Reply at 7-8.)

"The dispositive test for individual coverage under the FLSA looks to whether the plaintiff was an employee in the channels of interstate commerce as distinguished from one who

merely affected that commerce." *Wood v. Mike Bloomberg 2020, Inc.*, No. 20-CV-2489, 2025 WL 1002058, at *9 (S.D.N.Y. Mar. 31, 2025) (cleaned up), *reconsideration denied*, No. 20-CV-2489, 2025 WL 1696535 (S.D.N.Y. June 17, 2025). "To be 'engaged in commerce,' the employee must perform work 'involving or related to the movement of persons or things (whether tangibles or intangibles, and including information and intelligence) among the several States or between any State and any place outside thereof.'" *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354 (E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103). "As a basic rule, if the plaintiff did not have any contact with out-of-state customers or businesses, he cannot be individually covered under the FLSA." *Id.* (cleaned up).

Gromina contends that she "monitored international finance markets, processed cross-border trading signals, and communicated via internet and telecommunications platforms that are quintessential instrumentalities of interstate commerce." (Reply at 8 (first citing ECF No. 101-3 ("Gromina Dep.") at 34; then citing Kazmarck Dep. at 33-34).) But none of the portions of the deposition transcript that Gromina cites indicate that her work was necessarily interstate or international. (*See* Gromina Dep. at 34 (describing her work as "placing [signals] in Telegram chat under [Kazmarck's] supervision"); Kazmarck Dep. at 34 (describing the concept of analyzing the accuracy of trading signals and determining next steps based on accuracy).) Indeed, words like "foreign," "international," and "interstate" do not appear in either Gromina or Kazmarck's depositions, except for one unrelated use, and neither deposition makes clear that Gromina contacted out-of-state customers or businesses. (*See* Kazmarck Dep. at 13 (describing his own role at Kazmarck Capital as managing a "global macro strategy"); *see generally* Gromina Dep.) Likewise, Gromina's Rule 56.1 Statement makes no mention of the international or interstate nature of her work. (*See generally* Pl.'s Statement.) It may well be inferable from

this record that Gromina's work required her to participate in channels of interstate or foreign commerce, but it is equally possible on this record that Gromina merely entered into an Excel spreadsheet signals given to her by Kazmarck or others within the state. (*See, e.g.*, Kazmarck Dep. at 53-54 (describing Gromina's role as "receiving information, . . . writing it down into an Excel sheet, . . . looking at the statistics, and then . . . potentially relaying the information to users").) Indeed, Kazmarck's deposition emphasizes that Forexonia was "in its infancy stage," had "no product," and "never sold anything to anybody." (Kazmarck Dep. at 32, 47.) *Cf. Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 308 (E.D.N.Y. 2014) (holding that plaintiff was not individually covered by the FLSA where his interstate allegations included only that he drove an out-of-state car, bought gasoline for that car at gas stations which obtain fuel from outside of New York State, and used a cellphone but not for communication between states).

Given the sparse record before it, the Court cannot conclude that there is no genuine dispute as to whether Gromina was engaged in interstate or international commerce. Accordingly Gromina's motion for summary judgment is denied on her FLSA claims.

**B. Whether Gromina was an "Employee" Under the FLSA**

Gromina's motion for summary judgment fails for an additional reason: There is a genuine dispute as to whether she and Kazmarck had an employer-employee relationship.

Gromina asserts claims under the FLSA based on Kazmarck's failure to pay her minimum wage or overtime wages. (*See* ECF No. 1 ¶¶ 33-43, 54-65.) The provisions of the FLSA on which Gromina relies apply only to "employees." 29 U.S.C. §§ 206(a), 207(a)(1).

The FLSA defines "employee" as "any individual employed by an employer," notwithstanding exceptions not pertinent here. 29 U.S.C. § 203(e)(1). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts, determined by reference not to isolated

factors, but rather upon the circumstances of the whole activity." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quotation marks omitted). Gromina relies on a test that is primarily used when parties have disputed whether a plaintiff was an employee or an independent contractor: In such cases, courts have looked to "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 140 n.20 (2d Cir. 2017) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988)). (*See* Mem. at 10-13; Reply at 5-7.) However, the Second Circuit has cautioned against "mechanical application" of these factors, holding that "the ultimate question" is "the economic reality of Plaintiffs' relationship with [the defendant]." *Id.* (quotation marks omitted). Indeed, one court in this district, faced with the question of whether a plaintiff was an employee or a partner, has rejected rigid application of these factors on the basis that they "ignore[] or relegate[] to insignificance the economic reality of the partnership status itself." *Godoy v. Rest. Opportunity Ctr. of New York, Inc.*, 615 F. Supp. 2d 186, 194 (S.D.N.Y. 2009) (quoting *Wheeler v. Hurdman*, 825 F.2d 257, 274 (10th Cir. 1987)).

There is a genuine dispute as to whether Gromina qualifies as an employee under the FLSA. Although Gromina testifies to an employer-employee relationship (Gromina Dep. at 76), Kazmarck insists that the two verbally agreed to a partnership where they would split the profits from Forexonia fifty-fifty (Kazmarck Dep. at 37). "One person's testimony is sufficient to raise a genuine issue of fact unless the testimony 'is blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Wills v. Microgenics Corp.*, No. 20-CV-4432, 2025 WL

2208291, at *7 (E.D.N.Y. Aug. 4, 2025) (quoting *Bradshaw v. City of New York*, 855 F. App'x 6, 10 (2d Cir. 2021) (summary order)), *appeal dismissed* (Feb. 24, 2026).

The record does not so blatantly contradict Kazmarck's testimony. Gromina rightfully points out that she had no experience in the trading industry, a point Kazmarck concedes. (Def.'s Resp. ¶¶ 9-10.) Accordingly, although Kazmarck frames his instructions to Gromina as only "guidance" (*see, e.g.*, Kazmarck Dep. at 35), both his and Gromina's depositions clearly indicate that he was the only one in the purported partnership with the requisite "know-how" and "expertise" to operate a business like Forexonia. (*Id.* at 14.) Nonetheless, the record is murky as to "whether, as a matter of economic reality, [Gromina] depend[ed] upon someone else's business for the opportunity to render service or [was] in business for [herself]." *Godoy*, 615 F. Supp. 2d at 193 (quoting *Brock*, 840 F.2d at 1059). Gromina alleges that Kazmarck created her work schedule and controlled when she was required to work. (Pl.'s Statement ¶¶ 6-8.) But the purported work schedule that Gromina references was sent to her in April 2020, near the end of her time working with Kazmarck, and not when Gromina began her alleged employment. (*See* Kazmarck Dep. at 60-61.) After he sent the proposed schedule, Kazmarck then said, "It's all your choice. Write down your schedule. It can be flexible; it can change. But I need to know what it is, so I can help with the results." (Gromina Dep. at 73.) Kazmarck testified that he sent the schedule as a recommendation because he was trying to help fix Gromina's lack of progress as her partner, not as her employer. (Kazmarck Dep. at 64, 66.) Moreover, Kazmarck testified that Gromina could change her schedule or miss work without informing him and that Gromina could have worked for another company while working for Forexonia. (*Id.* at 84.) Kazmarck also maintains that Gromina could have made a work decision without his authorization and would occasionally make her own decisions notwithstanding his opinion. (*Id.* at 66, 80, 83.) On

this record, there is a genuine dispute as to the level of control Gromina had over her work and her work schedule.

Gromina argues in further support for her position that she never invested money into Forexonia, was employed for an indefinite duration, and performed an integral part of the business. (Reply at 5-6.) However, those factors of the economic reality framework are indicia of the employee's importance to the business and her control over its operations. They provide little insight into whether a plaintiff is an employee or a *partner*, as in both instances, the plaintiff is likely to have been integral to the business, and vice versa. *See, e.g.*, *Escobar v. GCI Media, Inc.*, No. 08-CV-21956, 2009 WL 1758712, at *3 (S.D. Fla. June 22, 2009) (holding that the standard economic reality factors are "useless for drawling lines" between partners because, "in the context of a partnership, every partner is dependent on the business" (quotation marks omitted)). For example, in the partnership context, a plaintiff's "sweat equity" may "represent[] [her] capital contribution to the business" and weigh against the existence of an employment relationship, even if she had not invested money in the business. *Godoy*, 615 F. Supp. 2d at 195 (quotation marks omitted). Moreover, it is just as likely for a partner to be indefinitely involved in an enterprise as an employee or to perform functions integral to the business, such that these factors offer relatively little insight in this context. *Id.* at 194 (noting that the duration of work and level of requisite skill are unhelpful factors in the partnership context). In comparison, profit sharing, as is alleged to have been the agreement here, is a "common characteristic[] of partnerships." *Id.* at 193 (quotation marks omitted).

Given the conflicting testimony and somewhat ambivalent record, which must be reviewed in a light most favorable to Kazmarck, the Court cannot conclude that "the economic reality of Plaintiff['s] relationship with [Defendant]" is clearly one of employer-employee.

*Saleem*, 854 F.3d at 140 n.20. Accordingly, Gromina cannot prevail as to her claims under the FLSA on summary judgment.

**C. Whether Gromina was an "Employee" Under the NYLL**

Gromina asserts claims under the NYLL based on Kazmarck's failure to pay her minimum wage or overtime wages, Kazmarck's retaliatory conduct against her, and his failure to provide her with timely wage statements or a wage notice. (*See* ECF No. 1 ¶¶ 44-53; 66-89.) The provisions of New York law on which Gromina relies apply only to "employees." N.Y. Lab. L. ("NYLL") §§ 160, 195, 198, 215(1)(a), 652; 12 N.Y. Comp. Codes R. & Regs. ("NYCRR") § 142-2.2.

"The NYLL provides the same definition for 'employee' as the FLSA." *Cox v. German Kitchen Ctr. LLC*, No. 17-CV-6081, 2023 WL 8648839, at *8 (S.D.N.Y. Dec. 14, 2023) (citing NYLL § 651). "The inquiry is similar to that called for under the FLSA, but a different set of factors apply for NYLL claims: (1) whether the worker worked at her own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." *Id.* (quotation marks omitted); *see also Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 79 (2d Cir. 2020) (summary order).

For reasons discussed above, there is a genuine dispute as to whether Gromina worked at her own convenience, was free to engage in other employment, or was on a fixed schedule. There is also a genuine dispute as to whether the sums paid to Gromina were wages, or whether Gromina and Kazmarck ever agreed to the payment of any wages. In one conversation, Kazmarck said, "I paid you 3 months in advance . . . I am paying for the apartment." (ECF No. 104-5 at 1.) However, five days later, Gromina messaged Kazmarck saying that she "will return the 1000 to [him] later," and two days after that, she again confirmed that, "[a]s soon as [she] find[s] a job and housing, START EARNING INCOME—[she] will return it to [him]." (*Id.* at

4.) It is therefore unclear if the sums of money Kazmarck paid Gromina were wages, as opposed to a loan, gift, or an advance on projected earnings from their partnership. (*Cf.* Kazmarck Dep. at 101-02.) The parties also dispute whether Gromina complained about her lack of wages to Kazmarck. (*Compare* Gromina Dep. at 26, *with* Kazmarck Dep. at 112.)

In short, there is a genuine dispute as to whether Gromina is an employee, as covered by the FLSA or the NYLL, because there is conflicting evidence in the record that supports both Gromina and Kazmarck's positions. "[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . for these are 'jury functions, not those of a judge.'" *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 255). Gromina thus cannot prevail on summary judgment. Because the Court concludes that there is a genuine dispute as to whether Gromina was Kazmarck's employee, it does not reach Kazmarck's other bases for denial.

## IV. Conclusion

For the foregoing reasons, Gromina's motion for summary judgment is DENIED.

The parties are directed to confer and to submit letters within fourteen days of the date of this Order addressing proposals for the remaining phase of this case, including (1) proposed dates and estimated length of time for trial, and (2) any proposals for settlement discussions.

The Clerk of Court is directed to close the motion at Docket Number 100.

SO ORDERED.

Dated: August 19, 2026
New York, New York

J. PAUL OETKEN
United States District Judge